# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| Jose Reynaldo Luera and Rose Luera, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:09-CV-136 JVB |
| ) | |
| FWCS Board of School Trustees, ) | |
| Dr. Wendy Robinson, Stephany Bourne, ) | |
| John Weicker, and William Sweet, ) | |
| ) | |
| Defendants, ) | |

## ORDER AND OPINION

Plaintiffs Jose Luera and Rose Luera sued Fort Wayne Community Schools, Stephany Bourne, John Weicker, William Sweet, and Dr. Wendy Robinson. In their complaint, the Lueras alleged that Defendants violated their Fourteenth Amendment Equal Protection rights and defamed them under Indiana state law.

In 1998, Plaintiff Jose Luera was arrested on drunken driving charges and was misidentified by Fort Wayne police as Jose Leura, a convicted sex offender from Florida. In 2007, Indian Village Elementary School officials also misidentified Mr. Luera as the Florida sex offender. During the relevant time period, Plaintiffs were residents of the Fort Wayne Community School system and their children attended Indian Village Elementary School. At the conclusion of discovery, Defendant moved for summary judgment. Having reviewed the parties' briefs, the Court finds no genuine issues of material fact and grants Defendant's Motion.

1

**A. Standard of Review**

1A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the

2

matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Statement of Facts**

As relevant to the Lueras' claims, the facts, taken in the light most favorable to the Lueras, are as follows:

**(1)** *Jose Luera's Incarceration and Identity Theft*

In 1998, Plaintiff Jose Luera was arrested for a DUI and incarcerated at the Allen County Jail. (Rose Dep. at 28–31.) Police misidentified him as Jose Leura, a convicted sex offender in Florida, and held him pursuant to the warrant for Mr. Leura's arrest. (Jose Dep. at 17–18.) When Mr. Luera learned about the warrant, his wife hired a lawyer to subpoena the fugitive's photographs and fingerprints, to prove that the warrant was for someone else. (Jose Dep. at 17–18.) After these items arrived, the warrants officer concluded that the warrant was for someone else and released Mr. Luera. (Jose Dep. at 17–18.) The warrants officer was concerned that Luera could be misidentified again since the fugitive had the same social security number. (Rose Dep. at 32; Jose Dep. at 17–18.) He typed up a letter that explained that Mr. Luera was not the fugitive from Florida to avoid any future misidentifications. (Jose Dep. at 17–18.) The officer told Mr. Luera to always carry a copy of the letter and use it to resolve any future identity disputes. (Jose Dep. at 17–18.)

A few years later, the IRS mistakenly identified Mr. Luera as the fugitive and attributed a substantial amount of income to him. (Rose Dep. at 32–33.) Mr. Luera showed the IRS official

a copy of his letter, which resolved the problem. (Rose Dep. at 33.)

**(2)** *Mistaken Identity at the Indian Village Elementary School*

In spring 2007, while the Lueras' children were attending Indian Village Elementary School, another child's parent contacted Juan Gorman, a case manager at Indian Village, about Mr. Luera. (Bourne Aff. ¶ 4.) The parent told Mr. Gorman that the Lueras applied to live at the apartment complex where she worked. (Bourne Aff. ¶ 4.) The apartment complex conducted a background check on Mr. Luera, which indicated that Mr. Luera was a convicted sex offender. (Bourne Aff. ¶ 5.) The apartment manager denied the Lueras the apartment. (Bourne Aff. ¶ 5.) After the parent provided Gorman with the report, he gave it to Stephanie Bourne, the Indian Village Principal. (Bourne Aff. ¶ 5.)

Ms. Bourne in turn passed the background check on to John Weicker, FWCS's director of security, so he could address the situation. (Bourne Aff. ¶ 7.) After reviewing the background check, Mr. Weicker conducted his own background check, and concluded that Mr. Luera was the sex offender from Florida. (Weicker Int. Resp. ¶ 2.) At Mr. Weicker's request, Ms. Bourne sent a letter to the Lueras explaining to them that she had learned that Mr. Luera might be a convicted sex offender from Florida and that such offenders were not allowed at Indian Village Elementary School. (Bourne Aff. ¶ 8, Ex. A.) The letter also explained that according to school policies, Mr. Luera could only come to school to pick up his children, to attend a meeting requested by the school, or to attend an assembly open to all parents. (Bourne Aff. Ex. A.) Additionally, he must report to the office when he arrived at school and could only travel through the school if he was escorted. (Bourne Aff. Ex. A.)

The Lueras hired an attorney who contacted the school on their behalf. (Rose Dep. at 48–50; Ex. D.) He explained to them that Mr. Luera was not the same person as the Florida sex offender and asked Ms. Bourne to write an apology letter to the Lueras "before the end of the school year." (Rose Dep. Ex. D.) After receiving the attorney's letter, Mr. Weicker conducted a second background check and concluded that the two individuals were not the same person. (Bourne Aff. ¶ 10.) Upon learning this information, and after consulting with FWCS general counsel William Sweet, Ms. Bourne issued a letter of apology to the Lueras and their attorney. (Bourne Aff. ¶ 11, Ex. C.) The Lueras assert that they never received their copy of the letter.

The Lueras next assert that Ms. Bourne mistreated them after she wrote the apology letter. (Rose Dep. at 56.) For instance, they claim that Ms. Bourne denied them access to the school, forced them to check in at the office, required them to be escorted throughout the building, and restricted the places where they could pick up and drop off their children, including their special needs child. (DE 75, at 5.) However, the Lueras also testified that they only visited the school a handful of times during the school year, they did not know the policies that applied to other parents, and there was a sign requiring parents to check in at the office. (Jose Dep. at 42, 47–49; Rose Dep. at 64–65.) Furthermore, Ms. Bourne testified that all parents were required to check in at the office, that she and her staff regularly escorted parents to and from classrooms, and that the school-wide policy required all parents to drop special needs children off at the back door and other children at the front door. (Bourne Aff. ¶¶ 12–13.) The Lueras tried to meet with Dr. Wendy Robinson, FWCS superintendant, about Ms. Bourne's actions but were unable to meet with her. (Rose Dep. at 71; Jose Dep. at 39.)

**C. Motion to Strike**

Defendants ask this Court to strike exhibits A, C, I, J, K, L, M, N, O, P, Q, R, S, T, and U. The Court need not address this motion because the Court does not consider inadmissible evidence. Furthermore, even if the Court were to consider the evidence, it would not change the outcome of this case.

**D. Discussion**

In this lawsuit, the Lueras claim that Defendants violated their Equal Protection rights under the Fourteenth Amendment to the United States Constitution and defamed them under Indiana state law. A plaintiff can make out an Equal Protection claim as a "class of one." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To prove he was defamed under Indiana state tort law, a plaintiff must establish four elements: 1) defamation, 2) malice, 3) publication, and 4) damages. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994).

**(1)** *Equal Protection Claims*

The Lueras claim that Ms. Bourne, Dr. Robinson, Mr. Sweet, Mr. Weicker, and the Fort Wayne Community Schools violated their Fourteenth Amendment Equal Protection rights.

A plaintiff can make an equal protection claim as a "class of one." *Village of Willowbrook*, at 528 U.S. at 564. But "it is difficult [for a plaintiff] to succeed with such a claim." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). To make such a claim, a plaintiff must "allege that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of*

*Willowbrook*, 528 U.S. at 562. "A court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *McDonald*, 371 F.3d at 1002.

**(a) Claims against Ms. Bourne**

The Lueras sued Indian Village Elementary School Principal Stephanie Bourne for Equal Protection violations because she allegedly treated them differently from other Indian Village parents. They allege that they were required to sign in at the office upon entering the building, drop their special needs child off at a different place from other students, and be escorted through the halls when visiting their children's teachers. However, they acknowledge that they only visited the school a handful of times during the school year and that they do not know the policies that applied to other parents. Additionally, they do not present evidence that they were members of a protected class. Instead, they allege that they were members of "a class of one." *See Village of Westbrook*, 528 U.S. at 564 (allowing plaintiffs to proceed on a class of one claim).

Ms. Bourne counters that all parents were required to sign in at the office, drop special needs children off at the back of the building, and be escorted throughout the halls when visiting the school. Ms. Bourne and Mr. Luera both acknowledge that a sign was posted near the front of the school requiring all parents to sign in at the office. Furthermore, Ms. Bourne points out that all parents are escorted to teachers' classrooms for four reasons: (1) so Ms. Bourne could take over classroom instruction while the parents and teacher conversed; (2) so teachers were not interrupted when the parents arrived unannounced; (3) so Ms. Bourne could be present to

7

support teachers in the event of a confrontation with parents; and (4) so she could serve as a good host. (Bourne Aff. ¶ 13.) Finally, Ms. Bourne notes, and the Lueras concede, that they were not always escorted through the halls of the school. Once Mr. Luera was allowed to walk to a teacher's classroom unescorted. (Jose Dep. at 41.) Also, Mrs. Luera was allowed to walk her special needs daughter to the back of the building and wait with her for fifteen minutes without being asked to leave. (Williams Dep. at 20–27.) Ms. Bourne argues that these facts indicate that any alleged mistreatment was isolated, infrequent, and did not rise above the level of occasional inconveniences and perceived slights. *Cf. Bell v. Duperrault*, 367 F.3d 703, 709 (7th Cir. 2004) (requiring Equal Protection violations to consist of more than "[b]ureaucratic inefficiencies and . . . downright rudeness").

The facts as set out by the the Lueras do not indicate that Ms. Bourne violated their Equal Protection rights. The evidence indicates that the school policies apply to all parents, not just the Lueras. The Lueras do not contest this evidence; indeed they concede its truthfulness. The evidence also indicates that Ms. Bourne had a rational basis for her actions: She wanted to prevent parents, including the Lueras, from disrupting classroom instruction. Therefore, the Lueras cannot succeed on their Equal Protection claim against Ms. Bourne because they fail to establish that she treated them differently from any other similarly situated parents at Indian Village Elementary School. *Cf. Village of Willobrook*, 528 U.S. at 562 (requiring a plaintiff to establish that he was treated differently from similarly situated parents).

**(b) Claims against Dr. Robinson, Mr. Sweet, Mr. Weicker, and FWCS**

8

The Lueras sued Dr. Robinson, the FWCS superintendent, because she they believe she refused to meet with them. However, there is no evidence in the record that she refused to meet with them; the Lueras only present evidence that Dr. Robinson's secretary would not let the Lueras meet with Dr. Robinson when they showed up unannounced at her office. Dr. Robinson was not directly involved in the alleged deprivation of the Lueras' Equal Protection rights. A defendant must be personally involved in a deprivation to be liable for that constitutional deprivation. *Cf. Johnson v. Snyder*, 444 F.3d 579, 583–84 (7th Cir. 2006) (granting summary judgment for a defendant because the defendant "was not personally involved in or responsible for the conditions about which [the plaintiff] complains"). There is also no evidence that Dr. Robinson treated similarly situated parents who dropped into her office unannounced differently. *Cf. Village of Willowbrook*, 528 U.S. at 562 (requiring a plaintiff to prove that he or she was irrationally treated differently from other similarly situated individuals). Furthermore, an alleged injury such as this, where Dr. Robinson could not meet with the Lueras, does not rise to the level of a constitutional violation. *Cf. Bell v. Duperrault*, 367 F.3d 703, 709 (7th Cir. 2004) (explaining that a constitutional violation requires more than mere "[b]ureaucratic inefficiencies and even downright rudeness").

The Lueras also sued Mr. Sweet, the FWCS general counsel, because he did not investigate the letter's truthfulness or work to resolve the situation before Ms. Bourne sent the initial letter. However, the Lueras present no evidence that Mr. Sweet was in a position to investigate the letter's contents before Ms. Bourne mailed it to the Lueras. There is also no evidence that Mr. Sweet had the opportunity to investigate the truthfulness of the letter's contents before Ms. Bourne mailed it. Most importantly to the Equal Protection claim, there is

no evidence in the record that Mr. Sweet treated similarly situated people differently. *Cf. McDonald v. Village of Winnetka*, 371 F.2d 992, 1001 (7th Cir. 2004) (requiring plaintiffs to meet the "high burden" of establishing that defendants treated similarly situated people differently). Specifically, the Lueras present no evidence that Mr. Sweet investigated the truthfulness of other letters that Ms. Bourne sent. While the Lueras allege that Mr. Sweet should have done something to stop Ms. Bourne's actions, to succeed on an Equal Protection claim, they must establish that Mr. Sweet actually took action to violate their rights. *Cf. Johnson*, 444 F.3d at 584 (granting summary judgment for a defendant who did not personally deprive the plaintiff's rights). Here Mr. Sweet took no action that led to an Equal Protection violation.

Additionally, the Lueras sued Mr. Weicker, the FWCS Director of Security, because he should have intervened on their behalf to stop Ms. Bourne from mistreating the Lueras. As with Dr. Robinson and Mr. Sweet, the Lueras do not claim Mr. Weicker took any affirmative action to violate their constitutional rights. Furthermore, the Lueras did not present any evidence that Mr. Weicker had knowledge of the situation, the ability to control the situation, or that he intentionally treated similarly situated persons differently. Without such a showing, the Lueras cannot prevail on their Equal Protection claim against Mr. Weicker. *Cf. Johnson*, 444 F.3d at 584 (granting summary judgment for a defendant who took no affirmative action to violate the plaintiff's constitutional rights).

Finally, the Lueras sued FWCS alleging that the school corporation violated their Equal Protection rights through the actions of the above named defendants. The Lueras seek to hold FWCS liable under a respondeat superior theory of liability. However, school corporations "cannot be held liable under § 1983 on a respondeat superior theory." *See Monell v. Dep't of*

*Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978) (prohibiting plaintiffs from basing § 1983 liability on a respondeat superior theory when suing a state employer). To prevail on a claim of municipal liability, the Lueras would have to establish proof of a custom, policy, or practice of equal protection violations. *See id*. Also, since they cannot prevail against any individual defendant, they cannot prevail against FWCS because there is no underlying liability. The Lueras did not present any evidence of such a custom, policy, or practice, and summary judgment in Defendants' favor is proper.

**(2)** *Defamation Claims*

**(a) Remaining jurisdiction over state law claims**

Before reaching the merits of the Lueras' state defamation claims, the court must address whether it can retain jurisdiction over these claims once it has granted a motion for summary judgment on all federal claims. This issue is governed by 28 U.S.C. § 1367(c)(3) which stipulates that "a district court may decline to exercise supplemental jurisdiction over a state law claim if: . . . the district court has dismissed all claims over which it has original jurisdiction." The United States Supreme Court explained that a court's exercise of supplemental jurisdiction is discretionary and is justified by "considerations of judicial economy, convenience and fairness to litigants." Several of this Circuit's cases have interpreted this provision to allow district courts to retain jurisdiction over the supplemental state claims. For example, the Seventh Circuit explained that a federal court may retain supplemental jurisdiction "even though the federal claims have been dropped out . . . where it is obvious how the claims should be decided." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Furthermore,

"while a district court may relinquish its supplemental jurisdiction if one of the conditions of § 1367(c) is satisfied, it is not required to do so." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). This Court elects to retain jurisdiction over the Lueras' state law defamation claims.

**(b) The Lueras' defamation claims are barred by Indiana's Tort Claims Act**

A plaintiff must notify "a political subdivision of the state" in writing before bringing suit against that subdivision. *Smith v. Miller Builders, Inc.*, 741 N.E.2d 731, 735 (Ind. Ct. App. 2000). Similarly, a plaintiff must notify state governmental employees before suing the employees for conduct that arose in within the scope of their employment. *Bienz v. Bloom*, 674 N.E.2d 998, 1004 (Ind. Ct. App. 1996). If a plaintiff fails to comply with the Tort Claims Act, the plaintiff's claim is barred. *Smith*, 741 N.E.2d at 735. The Lueras' tort claim notice only identifies Ms. Bourne and only refers to May 11, 2007 (the date of her initial letter). Therefore, under *Smith*, all tort claims against Mr. Sweet, Mr. Weicker, and FWCS are barred by Indiana's Tort Claims Act, as are all claims against Ms. Bourne that did not arise on May 11, 2007. *Cf. Boushehry v. City of Indianapolis*, 931 N.E.2d 892, 895 (Ind. Ct. App. 2010) (barring claims against a defendant that did not occur within the time period listed in the plaintiff's tort claim notice); *Smith*, 741 N.E.2d at 735–37 (barring claims against a state surveyor who was not listed as a person involved in the plaintiff's tort claim notice). As a result, all claims not listed in the Lueras' notice are barred and summary judgment is appropriate as to these claims. Moreover, even if the Court reaches the merits of the Lueras' defamation claim, they will not prevail.

**(c) Defamation**

The Lueras claim that Ms. Bourne, Mr. Weicker, and Mr. Sweet defamed them when Ms. Bourne sent the letter to Mr. Luera that outlined the school's policies for convicted sex offenders. To make out a claim for defamation under Indiana law, a plaintiff must prove four elements: 1) defamatory imputation, 2) malice, 3) publication, and 4) damages. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994). To establish the publication element, a plaintiff must show that the allegedly defamatory statements were communicated to a third party. *Id.*; *Bals v. Verduzco*, 600 N.E.2d 1353, 1354 (Ind. 1992). However, "truth is a complete defense to defamation" claims. *Gatto v. St. Richard School, Inc.*, 774 N.E.2d 914, 924 (Ind. Ct. App. 2002).

The Lueras assert that the initial letter Ms. Bourne sent to them was defamatory because it contained false information. However, the Lueras cannot show that Defendants published the information contained in the letter. A defamatory document is not published within the meaning of Indiana law when the document is sent to a plaintiff. *Cf. Bals*, 600 N.E.2d at 1354 (requiring publication to a third party). Therefore, the Lueras cannot rely on the letter Ms. Bourne sent to them to establish the publication element of their defamation claim.

Furthermore, the Lueras cannot show that Ms. Bourne published the defamatory letter by sending it to other FWCS employees, Mr. Weicker and Mr. Sweet. Employees are protected from defamation actions when they make those statements as part of a job related duty and in good faith. *Cf. Duggan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 188 (Ind. 2000) (explaining that a qualified privilege covers "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty,

13

either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty" (quoting *Schrader*, 639 N.E.2d at 188)). Ms. Bourne, Mr. Weicker, and Mr. Sweet are covered by the qualified privilege because their communications were based on their duty to investigate whether an Indian Village parent was a sex offender.

Even if the Lueras could establish all four elements, however, they still would not prevail on their defamation claim because Defendants are protected by the truthfulness defense. Under Indiana law, "truth is a complete bar to defamation." *Gatto*, 774 N.E.2d at 924. The allegedly defamatory letter stated in relevant part that the school system had received information indicating that Mr. Luera was a convicted sex offender in Florida. The letter also outlined the school's policies regarding sex offenders. Therefore, Defendant is protected from any defamation claims by the truthfulness defense. Accordingly, summary judgment in Defendants' favor is proper.

**E. Conclusion**

The Court denies the Defendants' motion to strike Exhibits A, C, I, J, K, L, M, N, O, P, Q, R, S, T, and U. Because the Lueras have failed to establish the necessary elements for an Equal Protection violation the Court grants summary judgment in favor of Defendants. Because the Lueras also fail to establish the necessary elements for a state law defamation claim, the Court grants summary judgment in favor of Defendants on all of the Lueras' claims.

SO ORDERED on November 18, 2011.

       S/ Joseph S. Van Bokkelen
      JOSEPH S. VAN BOKKELEN
      UNITED STATES DISTRICT JUDGE